No.

**In the United States Court of Appeals for the Fourth Circuit**

*In re* Petition Of Grace Ocean Private Limited, as Owner of the M/V DALI, and Synergy Marine Pte Ltd., as Manager of the M/V DALI, for Exoneration from or Limitation of Liability

On Appeal From the United States District Court of The District of Maryland (Civ. No. 24-00941-JKB).

# CLAIMANT'S PETITION FOR PERMISSION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)


Jeffrey P. Goodman
**SALTZ MONGELUZZI BENDESKY P.C.**
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel. 215.575.2970
jgoodman@smbb.com

Adam J. Levitt
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
alevitt@dicellolevitt.com

*Counsel for Claimant-Petitioner*

*(Additional counsel listed on signature page)*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __________ Caption: In re Petition Of Grace Ocean Private Limited, as Owner of the M/V DALI, and Synergy Marine Pte Ltd., as Manager of the M/V DALI, for Exoneration from or Limitation of Liability

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Mayor and City Council of Baltimore
(name of party/amicus)

who is petitioner, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ *Adam J. Levitt* Date: 11/20/2026

Counsel for: Petitioner

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................ 1

CONTROLLING QUESTIONS OF LAW ............................................................ 5

FACTUAL BACKGROUND AND STATEMENT OF THE CASE ............................ 5

LEGAL STANDARD ..................................................................................... 11

ARGUMENT .............................................................................................. 11

A. The Order Presents Controlling Questions of Law .................................. 11

B. Substantial Grounds for Difference of Opinion Exist ................................ 14

C. Immediate Review Will Materially Advance the Litigation ........................ 20

CONCLUSION ........................................................................................... 21

CERTIFICATE OF SERVICE ........................................................................ 22

## TABLE OF AUTHORITIES

**Page**

*In re Complaint of McCarthy Bros. Co./Clark Bridge*,
83 F.3d 821 (7th Cir. 1996) ....................16

*Consolidated Aluminum Corp. v. C.F. Bean Corp.*,
772 F.2d 1217 (5th Cir. 1985) ....................4, 18, 19

*Consolidated Aluminum Corp. v. C.F. Bean Corp.*,
833 F.2d 65 (5th Cir. 1987) ....................18, 19

*Dick Meyers Towing Service, Inc. v. United States*,
577 F.2d 1023 (5th Cir. 1978) ....................19

*Fecht v. Makowski*,
406 F.2d 721 (5th Cir. 1969) ....................3

*Goodman v. Archbishop Curley High School, Inc.*,
195 F. Supp. 3d 767 (D. Md. 2016)....................12, 20

*Hall v. Greystar Management Services, L.P.*,
193 F. Supp. 3d 522 (D. Md. 2016) ....................12, 14

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) ....................12

*Lake Tankers Corp. v. Henn*,
354 U.S. 147 (1957) ....................3, 15

*Louisiana ex rel. Guste v. M/V Testbank*,
752 F.2d 1019 (5th Cir. 1985) (*en banc*)....................19

*Lynn v. Monarch Recovery Management, Inc.*,
953 F. Supp. 2d 612 (D. Md. 2013)....................12, 14, 20

*Martin v. Harris*,
560 F.3d 210 (4th Cir. 2009) ....................4

*United States ex rel. Michaels v. Agape Senior Community, Inc.*,
848 F.3d 330 (4th Cir. 2017) ....................12

*Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*,
18 F.3d 260 (4th Cir. 1994) ....................4

*In re Muer*,
146 F.3d 410 (6th Cir. 1998) ....................................................................15, 16

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ..........................................................................20

*Robins Dry Dock & Repair Company v. Flint*,
275 U.S. 303 (1927)..........................................................................................2

*Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*,
2021 WL 4955040 (N.D. Fla. July 28, 2021)....................................................16

*Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*,
75 F.4th 1290 (11th Cir. 2023) ...................................................................16, 17

*In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*,
2019 WL 6345746 (D. Md. Nov. 26, 2019) ......................................................11

*Valley Line Co. v. Ryan*,
771 F.2d 366 (8th Cir. 1985) ..........................................................................16

*Venore Transportation Co. v. M/V Struma*,
583 F.2d 708 (4th Cir. 1978) ..........................................................................19

*In re Virginia Elec. & Power Co.*,
539 F.2d 357 (4th Cir.1976) ......................................................................12, 20

*Wheeler v. Marine Navigation Sulphur Carriers, Inc.*,
764 F.2d 1008 (4th Cir. 1985) ...............................................................3, 15, 17

*Yarmouth Sea Products Ltd. v. Scully*,
131 F.3d 389 (4th Cir. 1997) ..........................................................................20

**Statutes**

28 U.S.C. § 1292(b) ..........................................................................................11

28 U.S.C. § 1333 ...................................................................................................3

Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501-30 ..................................1

## INTRODUCTION

The questions presented for interlocutory appeal go to the heart of what a district court should, and should not, decide while adjudicating an action pursuant to the Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501-30 (the "Limitation Act").

On March 26, 2024, the nearly 1,000-foot container ship the M/V Dali slammed into the Francis Scott Key Bridge ("Key Bridge"), causing the bridge to collapse. Less than a week later, Petitioners—the owner and operator of the ship—filed suit seeking the protections of the Limitation Act. More than 50 claims were ultimately filed, including claims by the City of Baltimore (ECF No. 952 at 1). The City alleged that a major water main, located directly underneath the site of the allision, was harmed by the ship's evasive maneuvers and the subsequent bridge collapse. The City also explained that, since the Key Bridge represented a core artery of its transportation structure, the Bridge's destruction directly harmed the City's roads and bridges, which were connected to the bridge and have suffered additional stress due to the increased heavy traffic now running through the City. The City also alleged claims sounding in public nuisance and for lost tax revenues.

Shortly before trial to determine whether Petitioners were entitled to limit their liability under the Limitation Act—which had been scheduled for June 2026—many of the claimants settled. The City did not. ECF No. 827. Petitioners moved to

stay the limitation proceedings (ECF No. 840) and, when that motion was granted, filed a motion for judgment on the pleadings, asking the district court to consider the applicability of *Robins Dry Dock & Repair Company v. Flint* ("*Robins*"), 275 U.S. 303 (1927) to the remaining claimants' claims. ECF No. 856. Petitioners' primary argument was that *Robins* and its progeny barred the remaining claims, because they were for consequential economic damages, which, Petitioners argued are, per *Robins*, unavailable in maritime cases like this one. ECF No. 856-001. As a result, Petitioners argued, the non-settling claimants, including the City, were not proper parties to the Limitation Action. *Id*.

On Petitioners' motion, the claims of those who alleged solely pure economic losses—such as those of businesses who lost revenue when the port of Baltimore was closed, but otherwise suffered no physical damage—were dismissed on the basis of *Robins*. ECF No. 907. As to the City of Baltimore, the district court ruled the City remains a proper party in the limitation action due to the harm it alleged to its 72-inch water main, but that its claim for damages should be "narrowed." ECF No. 906 at 16. The Court concluded:

> The Court holds that the City may continue to assert claims for damage to the water main it owns, lying beneath the span of the Patapsco that the Key Bridge once spanned, and other damages flowing therefrom. But the City's claim will be dismissed as to the remainder of its damages—including increased maintenance and repair costs resulting from damage to its streets, lost tax revenue resulting from reduced local business activity, and others…

ECF No. 906 at 19. With its ruling, the district court adjudicated and dismissed every portion of the City's substantive claim other than its claim for physical damage to its water main, before Petitioners' very entitlement to limitation had been determined, and despite recognizing that the City was and remains a proper party to the limitation proceeding. ECF No. 906 at 11-15, 28-31; ECF No. 907 at 2.

Holding aside that its application of *Robins* to the City's claims was incorrect, by adjudicating the City's claims for damage before determining whether Petitioners can limit their liability, the district court fundamentally contravened the "limited purpose" of the Limitation Act. *Wheeler v. Marine Navigation Sulphur Carriers, Inc.*, 764 F.2d 1008, 1011 (4th Cir. 1985). It also violated the City's rights pursuant to the Saving to Suitors clause, 28 U.S.C. § 1333, which entitles "claimants…to proceed in a common law forum as they are entitled to do…" once the right to limitation is adjudicated. *Fecht v. Makowski*, 406 F.2d 721, 722 (5th Cir. 1969). Indeed, in the event the City proves at trial that Petitioners may not seek protection of the Limitation Act, the Limitation proceeding must be dissolved, and the City allowed to prove its claims for damages in State court. But, with the district court's ruling, the district court will have already dismissed many of those damages claims, transforming "the Limitation Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common law rights." *Id*. (citing *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957)). The district court

recognized that its ruling in this regard may have been incorrect, and accordingly certified the Order for interlocutory appeal.

Second, the district court also concluded that the harm to the City's roads and bridges, while direct physical damage caused by the allision, was too "remote" to be cognizable (ECF No. 906 at 28), a determination of proximate causation of the sort courts have explained requires a detailed factual record. *See*, *e.g., Martin v. Harris*, 560 F.3d 210, 217 (4th Cir. 2009) (questions of causation in an admiralty case are fact issues); *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d 260, 264 (4th Cir. 1994) (factors such as "foreseeability of the particular injury, the intervention of other independent causes, and the factual directness of the causal connection" are better considered after discovery); *Consolidated Aluminum Corp. v. C.F. Bean Corp*., 772 F.2d 1217, 1224 (5th Cir. 1985) (reviewing the extensive factual matters presented to the district court in determining proximate cause and foreseeability and "leav[ing] the determination of the foreseeability of Consolidated's injury for the trial court to determine.").

The City accordingly moved the district court for permission to petition this court for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on two controlling questions of law. Notably, Petitioners did not object to the motion for interlocutory appeal before the district court.

## CONTROLLING QUESTIONS OF LAW

1. Whether a limitation court may adjudicate and dismiss portions of a claimant's substantive maritime claim before determining the vessel owner's entitlement to limitation, where the claimant remains before the court on a viable physical-damage claim and has preserved its rights under the Saving to Suitors Clause.

2. Whether, on a Rule 12(c) motion, maritime law permits dismissal of a claim alleging physical damage to property in which the claimant has a proprietary interest based on the conclusion that the alleged causal chain is too remote to support recovery.

## FACTUAL BACKGROUND AND STATEMENT OF THE CASE

The Key Bridge was a 1.6-mile span connecting Baltimore County with Hawkins Point in Baltimore City. ECF No. 142 at 6-7. It carried approximately 30,000 commuters each day. *Id.* It also provided a critical route for hazardous-material traffic that could not travel through Baltimore's tunnels. ECF No. 142 at 6. The Port of Baltimore was one of the busiest ports in the United States, handling 55.5 million tons of cargo in 2023 and supporting tens of thousands of jobs, ECF No. 142 at 2-3, while generating more than $70 billion in economic value in 2023 alone. ECF No. 142 at 3.

On March 26, 2024, the DALI, a nearly 1,000-foot-long Neopanamax container ship, departed the Port of Baltimore bound for Sri Lanka. ECF No. 142 at 6-7. Approximately twelve minutes after leaving its berth, the DALI lost power and, while moving at approximately seven knots without sufficient power to steer, headed toward the Key Bridge. ECF No. 142 at 7-8. The crew dropped the DALI's anchors,

but dropping the anchors did not stop the DALI. ECF No. 142 at 8. At approximately 1:28 a.m., the DALI allided with the Key Bridge, causing its immediate collapse into the Patapsco River, killing six people, and bringing all or nearly all commercial traffic into and out of the Port of Baltimore to a halt. ECF No. 142 at 8.

The allision also caused substantial consequences to infrastructure owned and maintained by the City. ECF No. 876 at 5-10. The City's 72-inch water main was active at the time of the allision and lay beneath the area where the DALI and bridge debris came to rest. ECF No. 876 at 5-6. Following the allision, the City shut down the water main and conducted a robotic electromagnetic inspection that identified significant damage to the pipe's concrete structure, including in the area of the bridge collapse and the DALI's grounding. ECF No. 876 at 6-8. The City's engineering analysis concluded the allision damaged the water main's structural integrity, and that more than two miles of submerged pipe will require replacement. ECF No. 876 at 7-8. The City also retained a traffic engineer who identified 34 stretches of City roadway subjected to increased loads from traffic displaced by the destruction of the Key Bridge. ECF No. 876 at 9-10. That analysis concluded that the additional traffic is shortening the useful life of those roads and will require large-scale resurfacing. ECF No. 876 at 10. The City also alleged substantial additional losses, including lost tax and fee revenue and environmental monitoring, cleanup, and abatement costs. ECF No. 142 at 13-15.

Six days after the allision, Petitioners commenced this action seeking exoneration from liability or, alternatively, limitation of any liability. ECF No. 1. On April 22, 2024, the City filed its Answer and expressly reserved its rights under the Saving to Suitors Clause. ECF No. 18 at 7. On September 23, 2024, the City filed its Amended Claim, seeking recovery for physical damage to City property and other losses caused by the allision. ECF No. 142 at 13-15.

On November 7, 2024, the Court entered Case Management Order No. 3. ECF No. 438 at 1-3. The Court stated that it would "confine its determinations during Phase 1 to resolving whether Petitioners are entitled to exoneration from or limitation of liability." ECF No. 438 at 2. The Court anticipated reopening discovery after Phase 1 and expressly provided that no party would waive discovery rights by deferring discovery concerning damages or other matters focused on individual claims. ECF No. 438 at 2-3.

The backdrop of the case changed in the final days leading up to the scheduled limitation trial. On May 12, 2026, the United States indicted Synergy Marine Pte Ltd., Synergy Maritime Pte Ltd., and Technical Superintendent Radhakrishnan Karthik Nair. ECF No. 876 at 11. Petitioners moved to stay the limitation trial six days later based on the pending criminal charges. ECF No. 755. The Court denied that request. ECF No. 775. On May 22, 2026, the Court approved the parties' pretrial order and set the limitation trial to begin on June 1, 2026. ECF No. 773.

In the days that followed, the parties privately resolved all claims asserted by the Personal Injury/Wrongful Death Claimants and the Property Damage Claimants, as well as all but one claim asserted by the Cargo Claimants. ECF No. 906 at 3. Together with earlier settlements involving the United States, the State of Maryland, and the State's primary insurer, those settlements left two principal categories of claims pending in the limitation action: those brought by the Local Government Claimants and those of the Private Economic Loss Claimants. ECF No. 906 at 3. Petitioners again sought a stay and asserted that *Robins* barred the remaining claims as a matter of law and could permit resolution of the limitation action without trial. ECF No. 906 at 3.

The remaining claimants did not oppose a stay but objected to adjudication of *Robins* before conclusion of the criminal proceedings or trial. ECF No. 829. On June 1, 2026, the morning the limitation trial was scheduled to begin, the Court stayed the trial and permitted briefing on the application of *Robins* to the remaining claims, which claimants assert was improper. ECF No. 840.

On June 18, 2026, while the limitation action remained stayed, the DALI's Chief Engineer, Karthikeyan Deenadayalan, entered a deferred prosecution agreement in which he admitted violating the Ports and Waterways Safety Act. ECF No. 876 at 12. Deenadayalan acknowledged that he knew the DALI was using an unsafe fuel supply pump that compromised the vessel's safe navigation and its

ability to recover from a loss of power. ECF No. 876 at 12. He further acknowledged that an inability to recover from a loss of power could adversely affect the safety of the DALI, a bridge, structure, or shore area and adversely affect the DALI's seaworthiness and fitness for service. ECF No. 876 at 12.

On June 22, 2026, Petitioners moved for judgment on the pleadings against the claims remaining in the limitation action. ECF No. 856. On August 25, 2026, the Court filed its Memorandum and Order (the "Order") granting Petitioners' Motion in substantial part. ECF Nos. 906, 907. The Court permitted the City's claim for physical damage to its water main to proceed but otherwise granted Petitioners' Motion against the City. ECF No. 907 at 2. The Court rejected the City's argument that, once it found that the City was a proper party to the limitation action, the Court should not—pursuant to the Saving to Suitors clause and this Court's instruction—make any unnecessary rulings respecting the availability of the City's ultimate damages if and when the City proves Petitioners are unable to seek protection under the Limitation Act. Among other things, the Court also rejected the City's theories for recovery based on physical damage to its streets and bridges and public nuisance. ECF No. 906 at 24-31, 36-37, 50-53.

The City moved the district court for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Petitioners did not oppose. Analyzing solely the first question the City posed—regarding the district court's authority to adjudicate

damages claims where such adjudication is unnecessary to the adjudication of Petitioners' right to limitation—the district court agreed that an interlocutory appeal was appropriate.[1] As it explained, the question is a "controlling question of law" because "if the Court of Appeals concludes that the Court did not have the authority to adjudicate and dismiss portions of the City's claim prior to determining Petitioners' entitlement to limitation, those portions of its claim would be reinstated." ECF No. 952 at 5. The district court further explained that there exists substantial ground for difference of opinion as to the question, since many courts "have postponed the assessment of *Robins* issues until after deciding limitation, as this Court previously indicated it would," and since courts, including this Court, have "underscored the limited purpose of the Limitation of Liability Act." ECF No. 952 at 6.

The district court determined that resolution of the question before the Court of Appeals would materially advance the ultimate termination of the litigation. As it explained, a "decision from the Court of Appeals would provide clarity as to the scope of the City's claims in the limitation action" and "permit resolution of the threshold question of which claims are still live before the Court proceeds to a lengthy and costly trial on the question of whether Petitioners are entitled to

---

[1] Having so-determined, the district court declined to consider the second question, relating to the proximate causation analysis, at all.

limitation." ECF No. 952 at 7. Finally, the district court urged that "[c]larity as to the scope of the City's claims would likewise encourage settlement, and thus could materially advance the ultimate termination of this litigation." ECF No. 952 at 7.

The district court further explained that the procedural posture meant that interlocutory review makes good practical sense:

> [T]his is an unusual case, as the other claimants whose claims were fully or partially dismissed in the Memorandum and Order have filed direct appeals to the Court of Appeals. Thus, there is no danger that certifying the Memorandum and Order will result in the sort of piecemeal litigation against which the general prohibition on interlocutory appeals guards…the practical reality is that *denying* certification of the Memorandum and Order for appeal risks a fragmented appellate review of the issues in this case.

ECF No. 952 at 7.

This Petition followed.

## LEGAL STANDARD

Section 1292(b) authorizes certification of an otherwise non-appealable order when the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## ARGUMENT

### A. The Order Presents Controlling Questions of Law

A question is "controlling" when its resolution is "serious to the conduct of

the litigation, either practically or legally." *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation*, No. 1:17-md-2775, 2019 WL 6345746, at *2 (D. Md. Nov. 26, 2019) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)). Courts have found a question controlling where an incorrect ruling would constitute reversible error on final appeal, *Lynn v. Monarch Recovery Management, Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013), or where its resolution determines whether a claim remains in the case or otherwise fixes the legal framework governing further proceedings. *Goodman v. Archbishop Curley High School, Inc.*, 195 F. Supp. 3d 767, 772-73 (D. Md. 2016); *In re Virginia Elec. & Power Co.,* 539 F.2d 357, 364 (4th Cir.1976) (§ 1292(b) appeal appropriate where resolution of controlling question could prevent substantial delay).

A '"question of law' is a question directed to 'the meaning of a statutory or constitutional provision, regulation, or common law doctrine,' as opposed to a question heavily freighted with the need for factual assessment." *Hall v. Greystar Management Services, L.P.*, 193 F. Supp. 3d 522, 525 (D. Md. 2016). The Fourth Circuit has described the inquiry as directed to a "pure" question of law—an "abstract legal issue" that can be decided "quickly and cleanly" without delving beyond the surface of the record. *United States ex rel. Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 340-41 (4th Cir. 2017). Just such a quick and clean decision can be made here, where the district court ruled on the pleadings.

The Order first presents a controlling question concerning the proper scope of the limitation proceeding. The City remains before this Court on its claim for physical damage to the 72-inch water main and expressly preserved its rights under the Saving to Suitors Clause. ECF No. 18 at 7; ECF No. 907 at 2. The Court nevertheless adjudicated and dismissed the remainder of the City's substantive claims before determining Petitioners' entitlement to limitation. ECF No. 906 at 11-15; ECF No. 907 at 2. Whether the Limitation Act permits that adjudication presents a question concerning the legal authority and proper scope of a limitation court, not a factual dispute. Its resolution determines whether those portions of the City's claim were properly adjudicated at this stage or instead must await resolution of limitation and the City's resulting choice of forum. If Petitioners ultimately fail to establish any entitlement to limitation and the City proceeds in its chosen state-court forum, the City may nevertheless arrive there with the scope of its recoverable damages restricted by a federal merits ruling entered in a limitation proceeding that ultimately afforded Petitioners no right to limit their liability. That consequence bears directly on the City's rights under the Saving to Suitors Clause and on the proper scope of adjudication before entitlement to limitation has been determined.

Separately, the Order presents a controlling merits question concerning the City's claim for physical damage to its streets and bridges. The Court accepted that the damage the City alleges to its streets and bridges is "physical in nature," but

dismissed the claim as "too remote and attenuated to recover, pursuant to both *Robins* and more general principles of maritime negligence." ECF No. 906 at 28. Whether the alleged causal chain can defeat recovery for physical damage presents a legal question concerning the scope of *Robins* and its relationship, or lack thereof, to ordinary maritime negligence. That question governs both bases upon which the Court relied. ECF No. 907 at 2. An erroneous resolution of that question would require reversal of the dismissal on final appeal. Additionally, because the Court ruled on the pleadings, and Case Management Order No. 3 deferred claimant-specific and damages discovery to later proceedings, there can be no doubt that the question requires no resolution of disputed facts. ECF No. 906 at 8; ECF No. 438 at 2-3. The Fourth Circuit can, therefore, resolve the governing legal rule without determining whether the City's streets were damaged, what caused that damage, the amount of any loss, or any other issues of disputed fact.

### B. Substantial Grounds for Difference of Opinion Exist

A substantial ground for difference of opinion exists when "courts, as opposed to parties, disagree on a controlling legal issue." *Lynn*, 953 F. Supp. 2d at 624. A question of first impression, standing alone, is insufficient. *Id.* But § 1292(b) does not require an outright conflict in authority. The inquiry is whether the governing law presents a genuine basis for disagreement rather than a straightforward application of settled law. *Hall*, 193 F. Supp. 3d at 527-28.

*a. The Scope of the Limitation Proceeding Is Unsettled*

Substantial grounds for disagreement exist concerning whether the Court should have adjudicated and dismissed portions of the City's substantive claim despite recognizing the City as a proper party before it in the limitation action, before determining Petitioners' entitlement to limitation. While "[f]ederal courts have exclusive admiralty jurisdiction to determine whether a vessel owner is entitled to limited liability," the "same statute that grants the federal courts exclusive admiralty jurisdiction saves to suitors 'all other remedies to which they are otherwise entitled," which "embodies a presumption in favor of jury trials and common law remedies in the forum of the plaintiff's choice." *In re Muer*, 146 F.3d 410, 417 (6th Cir. 1998). The result is a fundamental "tension…between the exclusive jurisdiction vested in the admiralty courts to determine a vessel owner's right to limited liability and the savings to suitors clause." *Id*. As a result, circuit courts repeatedly emphasize the "limited purpose" of the limitation of liability proceeding, *Wheeler*, 764 F.2d at 1011, and instruct that the district court, in determining liability, should determine no more than required in that proceeding, lest the proceeding "thwart a plaintiff's right to a jury trial…[and] 'transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common law rights.'" *Id*. (quoting *Lake Tankers Corp.,* 354 U.S. at, 152).

Circuit courts accordingly reverse where the district court makes decisions—

even for reasons of perceived judicial economy—that are ultimately ancillary to that liability decision. *See, e.g.*, *In re Muer*, 146 F.3d at 417 ("[t]he district court overstepped its bounds by reaching issues ancillary to the [Limitation of Liability Action]"); *Valley Line Co. v. Ryan*, 771 F.2d 366, 373 (8th Cir. 1985) (finding district court erred in reaching damages issues because "all the shipowner is entitled to is to limit its liability."); *In re Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 831 (7th Cir. 1996) (sua sponte reversing liability determination where court took jurisdiction over issues ancillary to limitation).

Courts have specifically cautioned district courts against proceeding unnecessarily with a *Robins* analysis. For example, in *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, the district court deferred a *Robins* motion in part to protect the claimants' ability to litigate in their chosen forums if limitation were denied. *Id.*, No. 3:20CV5980/LAC/HTC, 2021 WL 4955040, at *9 (N.D. Fla. July 28, 2021). The Eleventh Circuit affirmed the later dismissal of the limitation proceedings after limitation was denied, and explained that the Limitation Act protects the vessel owner's right to limitation but "does not create an independent right to have the full merits of each individual claim decided in federal court when no limitation is available." *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1298-99 (11th Cir. 2023).

The district court here took a different approach. It concluded that the Saving

to Suitors Clause did not prevent it from determining whether the remaining claimants had stated legally cognizable claims and distinguished *Skanska* in part because physical-damage claims remained pending in *Skanska*. ECF No. 906 at 11-15. But a physical-damage claim remains pending here as well—the City's claim for damage to its 72-inch water main. ECF No. 907 at 2. The City, therefore, remains a claimant in the limitation proceeding regardless of the dismissed portions of its claim. ECF No. 907 at 2.

Neither *Wheeler* nor *Skanska* squarely decides whether a limitation court may adjudicate and permanently dismiss portions of such a claimant's substantive maritime claim before determining whether the vessel owner has any right to limitation. But both decisions emphasize that the federal Limitation Act proceeding exists to protect the shipowner's limitation right and that, when that right fails, the claimant's choice of forum again controls. *Wheeler*, 764 F.2d at 1011-12; *Skanska*, 75 F.4th at 1307. The question of whether the district court accordingly abused its discretion is especially critical here because, if Petitioners ultimately establish no entitlement to limitation, the City may return to its chosen forum with the categories of damages it may recover seemingly[2] restricted by a federal merits ruling entered

[2] It remains an open legal question as to whether the district court's decision in the ultimately dissolved limitation action respecting an ancillary damages issue has the force of res judicata in a subsequent state court proceeding, particularly if there is no mechanism to appeal that decision following the determination of limitation.

in a limitation proceeding that ultimately afforded Petitioners no right to limit their liability. Those authorities, in addition to the absence of controlling Fourth Circuit precedent addressing this sequence, provide substantial ground for difference of opinion as to the proper scope of the limitation court's authority at this stage.

*b. Proximate Causation Issues Also Raise Unresolved Questions of Law*

Substantial grounds for disagreement likewise exist concerning the Court's treatment of the City's claims of damage to its roads and bridges. The Key Bridge was a part of the City's integrated municipal road network, and the added stress from heavy traffic is taking a substantial toll on the City's roads and bridges forced to take up the slack following the Key Bridge's destruction. Circuit courts reviewing maritime cases have found that, in circumstances where an allision causes a direct physical harm—even where that harm is miles away—a district court must not dismiss the case on the pleadings, but must instead consider a full factual record.

For example, in *Consolidated Aluminum Corp.*, 772 F.2d at 1219-20, a dredge ruptured a third party's gas pipeline approximately six miles from the plaintiff's aluminum plant, reducing the plant's gas supply and causing substantial physical damage to equipment the plaintiff owned due to that reduction. The Fifth Circuit held that the *Robins Dry Dock/Testbank* limitation did *not* bar the claim because the plaintiff suffered physical injury to its own property, and that instead a fact-bound foreseeability analysis must be employed on a full record. *Id.* at 1222. The court

explained that *Robins* does not depend on whether an injury is "'foreseeable' or 'remote' in a factual sense, but instead on 'the character of the interest harmed.'" *Id.* (quoting *Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1024 (5th Cir. 1985) (*en banc*), *cert. denied*, 477 U.S. 903 (1986) ((quoting *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023, 1025 (5th Cir.1978), *cert. denied,* 440 U.S. 908 (1979))). After remand and development of an evidentiary record, the Fifth Circuit affirmed the determination that the physical damage to Consolidated Aluminum's plant was too remote to have been reasonably foreseeable. *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 68-69 (5th Cir. 1987). Thus, *Consolidated Aluminum* treated the two inquiries separately: (1) whether *Robins* categorically barred recovery for physical damage to proprietary property; and (2) whether, as a factual matter, that physical damage was nevertheless too remote under ordinary maritime negligence principles. *Id*. at 66, 68-69.

But the Fourth Circuit has never considered such a question with respect to the relationship between foreseeable, if slightly attenuated, physical harm caused by a maritime casualty, and that harm's purported relationship to *Robins*. Instead, its decisions addressing *Robins* emphasize the pragmatic considerations underlying the rule. In *Venore Transportation Co. v. M/V Struma*, the court observed that *Robins* is "perfectly defensible" where "pragmatic considerations require the foreclosure of remote damage claims," but permitted recovery where the losses were not remote.

583 F.2d 708, 710 (4th Cir. 1978). In *Yarmouth Sea Products Ltd. v. Scully*, the Fourth Circuit again emphasized those "pragmatic considerations" and permitted fishermen in a "special situation" to recover direct and foreseeable economic losses. 131 F.3d 389, 398-99 (4th Cir. 1997).

Whether the district court erred in its maritime foreseeability analysis, or whether "practical considerations" should separately allow the City to recover for obviously foreseeable damage to its roads and bridges, remain open questions.

*c. Immediate Review Will Materially Advance the Litigation*

An interlocutory appeal materially advances litigation when it may eliminate the need for trial or otherwise prevent substantial delay, *In re Virginia Elec. & Power Co.,* 539 F.2d at 364, simplify the issues to be tried, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011), or make discovery easier and less costly. *Goodman*, 195 F. Supp. 3d at 773; *Lynn*, 953 F. Supp. 2d at 626.

As the district court explained, it would do so here. First, "[c]ertification will permit resolution of the threshold question of which claims are still live before the Court proceeds to a lengthy and costly trial …" ECF No. 952 at 7. Second, "[c]larity as to the scope of the City's claims would likewise encourage settlement, and thus could materially advance the termination of the litigation." ECF No. 952 at 7.

Finally, an interlocutory appeal here will be essential to avoid inefficiency and piecemeal appeals, as a large number of claimants were fully or partially dismissed

by the Order from which the City seeks a right to interlocutory appeal, and the "practical reality is that *denying* certification of the Memorandum and Order for appeal risks a fragmented appellate review of the issues in this case." ECF No. 952 at 7-8.

## CONCLUSION

For all the foregoing reasons, the City respectfully requests that the Fourth Circuit certify the district court's August 25, 2026 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: November 20, 2026

Respectfully submitted,

/s/ *Adam J. Levitt*
Adam J. Levitt
Diandra "Fu" Debrosse
Daniel R. Schwartz
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: 312-214-7900
alevitt@dicellolevitt.com
fu@dicellolevitt.com
dschwartz@dicellolevitt.com

Jeffrey P. Goodman
Javier Puga
**SALTZ MONGELUZZI BENDESKY P.C.**
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
jgoodman@smbb.com
jpuga@smbb.com

***Counsel for Claimant-Petitioner, the City of Baltimore***

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** ____________ **Caption:** In re Petition Of Grace Ocean Private Limited, as Owner of the M/V DALI, and Synergy Marine Pte Ltd., as Manager of the M/V DALI, for Exoneration from or Limitation of Liability

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as `Courier New`) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑ this brief or other document contains 5,076 [*state number of*] words

☐ this brief uses monospaced type and contains ____________ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑ this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word [*identify word processing program*] in
Times New Roman, 14 pt, regular [*identify font, size, and type style*];

**or**

☐ this brief or other document has been prepared in a monospaced typeface using
______________________________ [*identify word processing program*] in
______________________________ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) *Adam J. Levitt*

Party Name The Mayor and City Council of Baltimore Date: 11/20/2026

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2026, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. I further certify that on November 20, 2026, I caused a copy of this document to be delivered by email upon the following:

**DUANE MORRIS LLP**
Laurie G. Furshman
Lgfurshman@duanemorris.com
Robert B. Hopkins
Rbhopkins@duanemorris.com
Tristan A. Dietrick
tdietrick@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321

**BLANK ROME LLP**
Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110

William R. Bennett, III
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.
Thomas.Belknap@blankrome.com
Noe S. Hamra Noe
Hamra@blankrome.com
Neil P. McMillan Neil
McMillan@blankrome.com
1271 Avenue of the Americas
New York, NY 10020

Kierstan L. Carlson
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006

Respectfully Submitted,

/s/ *Adam J. Levitt*
Adam J. Levitt